## IN THE SUPERIOR COURT OF GWINNETT COUNTY

Niloy, Inc., Nilhan Developers, LLC      **STATE OF GEORGIA**

DCT Systems Group, LLC, Sugarloaf Centre, LLC,
NRCT, LLC, Niloy & Rohan, LLC,                          CIVIL ACTION **15A  04923  10**
Jax Fairfield Financial, LLC,                           NUMBER
Bay Circle Properties, LLC, Saloni Thakkar, and
Chittranjan K. Thakkar,

PLAINTIFF S

VS.

Wells Fargo Bank, NA,

DEFENDANT

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of Said Court and serve upon the Plaintiff's attorney, whose name and address is:

Jeremy U. Littlefield, Esq.
Robbins Ross Alloy Belinfante Littlefield LLC
999 Peachtree Street, N.E.
Suite 1120
Atlanta, Georgia 30309
(678) 701-9376 - Phone

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____1St_____ day of _____May_____, 20_1_5.

RICHARD T. ALEXANDER, JR., CLERK

Tom Lawler
Clerk of Superior Court

By:_____
Deputy Clerk

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

COC SC-1 Revised 12-99

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

**IN THE SUPERIOR COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

2015 MAY -1  PM 1: 24

RICHARD ALEXANDER, CLERK

| | |
|---|---|
| NILOY, INC.,<br>NILHAN DEVELOPERS, LLC,<br>DCT SYSTEMS GROUP, LLC,<br>SUGARLOAF CENTRE, LLC,<br>NRCT, LLC, NILOY & ROHAN, LLC,<br>JAX FAIRFIELD FINANCIAL, LLC,<br>BAY CIRCLE PROPERTIES, LLC,<br>SALONI THAKKAR, and<br>CHITTRANJAN K. THAKKAR<br><br>    Plaintiff,<br><br>    vs.<br><br>WELLS FARGO BANK, NA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION
15A  04923  10
FILE NO. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Niloy, Inc. ("Niloy"), Nilhan Developers, LLC ("Nilhan

Developers"), DCT Systems Group, LLC ("DCT Systems"), Sugarloaf Centre,

LLC ("Sugarloaf"), NRCT, LLC ("NRCT"), Niloy & Rohan, LLC ("Niloy &

Rohan"), JAX Fairfield Financial, LLC ("JAX"), Bay Circle Properties, LLC

("Bay Circle"), Chittranjan K. Thakkar ("Mr. Thakkar"), and Saloni Thakkar

("Mrs. Thakkar") (collectively, "Plaintiffs") assert the following claims against

Defendant Wells Fargo Bank, NA ("Defendant" or the "Bank").

## OVERVIEW

Plaintiffs are all obligors under that certain Amended and Restated Loan Agreement (the "Loan"), dated as of April 30, 2013, between Niloy, Nilhan Financial, LLC, Mr. Thakkar, and Mrs. Thakkar, as borrowers, and Defendant, as lender.  Plaintiffs are owners of real property collectively worth over $30 million, all of which are pledged to Defendant as security for the loan.

On April 2, 2015, Plaintiffs and Defendant agreed to enter into a forbearance agreement, pursuant to which Plaintiffs paid $500,000 to Defendant to be held in trust pending execution of such agreement, upon which an additional $150,000 would be due.  Defendant also agreed to cancel the foreclosure sales, which were then scheduled for April 7, 2015.  Plaintiffs reasonably relied upon and expected Defendant to honor its commitment, for which Plaintiffs paid a substantial sum. Defendant, however, almost immediately reneged on the deal and repeatedly insisted on execution of a "forbearance" agreement that provided no forbearance protection at all.

After weeks of continued diligent and good faith efforts by Plaintiffs to work towards execution of a forbearance agreement, it became apparent that Defendant's overall goal, contrary to its express assurances to Plaintiffs, was to foreclose on Plaintiffs' properties that are worth over $10 million in excess of the loan balance, or to extort substantial additional cash payments from Plaintiffs.  This was

-2-

intentionally deceptive, a violation of the deal reached between the parties, and a breach of the covenant of good faith and fair dealing.

In the event Defendant proceeds with wrongful foreclosures or pursues other default remedies, Plaintiffs damages will be no less than **THIRTY MILLION DOLLARS ($30,000,000.00)**.  In addition to the immediate reduction in value as a result of the wrongful foreclosures, Plaintiffs will also incur substantial lost profits. As Defendant is well aware, Plaintiffs are actively developing the properties (one of which is located adjacent to the new Atlanta Braves stadium), which when completed is expected to roughly double the value of the properties.  Defendant was well aware of Plaintiffs' plans to monetize the properties and induced Plaintiffs to act to their detriment.  Indeed, in reliance upon Defendant's representations that the parties would execute a forbearance agreement, Plaintiffs made additional investments in the properties that they otherwise would not have had they known that foreclosure was imminent.  Given the uncertainty of impending wrongful foreclosures, valuable contracts have been or will be terminated, resulting in millions of dollars in damages.

## THE PARTIES

1.

Niloy is a Georgia corporation and borrower under the Loan.

2.

Nilhan Developers is a Georgia limited liability company and a guarantor of the Loan. Nilhan Developers owns multiple parcels of real property located in Cobb County, Georgia, which are the subject of Defendant's wrongful notice of foreclosure.

3.

DCT Systems Group is a Georgia limited liability company and guarantor of the Loan. DCT Systems Group owns multiple parcels of real property located in Gwinnett County, Georgia, which are the subject of Defendant's wrongful notice of foreclosure.

4.

Sugarloaf is a Georgia limited liability company and guarantor of the Loan. Sugarloaf owns multiple parcels of real property located in Gwinnett County, Georgia, which are the subject of Defendant's wrongful notice of foreclosure.

5.

NRCT is a Georgia limited liability company and guarantor of the Loan. NRCT owns multiple parcels of real property located in Gwinnett County, Georgia, which are the subject of Defendant's wrongful notice of foreclosure.

6.

Niloy & Rohan is a Georgia limited liability company and guarantor of the Loan.

7.

JAX is a Florida limited liability company and guarantor of the Loan.

8.

Bay Circle is a Florida limited liability company and guarantor of the Loan. Bay Circle owns multiple parcels of real property located in Gwinnett County, Georgia, which are the subject of Defendant's wrongful notice of foreclosure.

9.

Mr. and Mrs. Thakkar are residents of the State of Florida.  Mr. and Mrs. Thakkar are borrowers and/or guarantors of the loan at issue.

10.

Defendant is a California corporation.  Defendant may be served through its Registered Agent, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## JURISDICTION AND VENUE

### 11.

Jurisdiction is proper as Defendant routinely conducts business in Gwinnett County, Georgia, and otherwise has substantial contacts with Gwinnett County, Georgia.

### 12.

Venue of this matter in the Superior Court of Gwinnett County, Georgia is proper pursuant to the provisions of O.C.G.A. § 9-10-93 and other applicable provisions and principles of law because a substantial part of the business was transacted and the tortious act, omission, or injury occurred within in this County.

## FACTS

**A.    The Parties' Agreement**

### 1.

On April 2, 2015, as confirmed by the parties' written correspondence, Plaintiffs and Defendant (by and through their respective counsel) agreed to enter into a forbearance agreement pursuant to which Defendant would agree to forbear from exercising its rights and remedies against Plaintiffs until December 31, 2015, by which date Plaintiffs would pay the remaining loan balance in full. In consideration for this agreement, Plaintiffs agreed to pay Defendant $650,000. These were the essential terms of the parties' agreement.

2.

Upon reaching this agreement, Plaintiffs agreed to wire $500,000 (the "Closing Payment") to Defendant's counsels' trust account to be held in trust pending execution of the forbearance agreement and payment of an additional $150,000 upon closing.

3.

The parties further agreed that Defendant would be permitted to retain the Closing Payment only in the event that Plaintiffs failed to meet the requirement of executing the forbearance agreement and delivering the additional payment of $150,000.

4.

In light of the parties' agreement to execute the forbearance agreement, Defendant agreed to cancel the foreclosure sales, then scheduled for April 7, 2015.

5.

After wiring the first installment of the Closing Payment to Defendant ($350,000), Plaintiffs sought confirmation of cancellation of foreclosure sales, which Defendants' counsel provided as follows:

> *The foreclosure sales will not be **canceled** until the second wire of $150,000 is received tomorrow. The sales can be **canceled** through 3 p.m. tomorrow. Once the $150,000 is received tomorrow (before 3 p.m.), they will be **canceled**.*

-7-

A true and accurate copy of the parties' email correspondence memorializing these terms is attached as Exhibit A (emphasis added).  There was no discussion of "postponement" of foreclosure sales until the following month on May 5, 2015.

6.

Plaintiffs timely made the scheduled payments in reliance upon Defendant's written assurances and representations.  Plaintiffs reasonably expected that Defendant would honor its commitments as confirmed in writing by its counsel.

**B.**    **Defendant Refuses to Honor the Parties' Agreement.**

7.

Upon receipt of the initial payment of $350,000 towards the forbearance agreement, Defendant immediately attempted to change the terms of the parties' agreement by taking the position that the foreclosure sales were not "canceled" but merely "postponed" until May 5, 2015, which was contrary to the express terms of the parties' agreement, as confirmed by Defendant's counsel.  Plaintiffs would not have paid $500,000 to merely delay foreclosure sales by a month.

8.

Prior to acceptance of Plaintiffs' funds, there is no record of any discussion between the parties of foreclosure sales being "postponed" until May 5, 2015, and the term sheet dated March 31, 2015 – upon which the parties' agreement was based – contained no such reservation of rights.

-8-

9.

Conceding this point, Defendant demanded that Plaintiffs execute a **revised** term sheet that **for the first time** included a provision allowing for notice of foreclosure sales on May 5, 2015.  This was a classic bait-and-switch.

10.

Plaintiffs refused to modify the terms of the deal, despite threats that Defendant intended to proceed with the foreclosure sales then scheduled for April 7, 2015, unless Plaintiffs executed the revised term sheet.

11.

Plaintiffs wired the remaining balance of the Closing Payment ($150,000) on April 3, 2015 and reminded Defendant of its obligation to honor its agreement.

12.

After receiving and accepting Plaintiffs' additional funds, Defendant nonetheless noticed foreclosure sales for May 5, 2015.  Plaintiffs expected that the May 5, 2015 foreclosures would be a moot point upon execution of the forbearance agreement, as agreed upon by the parties.

13.

Unfortunately, Plaintiffs' efforts to work cooperatively on execution of the forbearance agreement were not reciprocated by Defendant.  Despite numerous

overtures by Plaintiffs, Defendant refused to enter into an agreement that provided Plaintiffs any forbearance protection, contrary to its prior commitment.

14.

In its continued bad faith, Defendant insisted upon execution of a "forbearance" agreement that included the following terms, which are contrary to the parties' agreement that Defendant would forbear until December 31, 2015: (i) the agreement actually permitted Defendant to proceed with foreclosure sales; (ii) Defendant continued to reserve its rights to proceed with the May 5, 2015 foreclosure sales notwithstanding the purported agreement to forbear; (iii) varying and ambiguous default provisions allowed Defendant unmitigated discretion to terminate the forbearance agreement without any notice or opportunity to cure; and (iv) Plaintiffs were stripped of all their rights and remedies, including even the ability to "threaten" legal action against Defendant, whether under the loan documents or otherwise.

15.

As a condition of the agreement to forbear, Defendant also demanded payment of all its attorneys' fees, which were substantial, while refusing to provide any backup for the amounts claimed, even though the loan agreement only required Plaintiffs to pay for "reasonable" fees.

16.

The execution of a forbearance agreement should have been a simple matter of documenting the core terms that are necessary to any such agreement, yet after several weeks of working with Defendant on finalizing the forbearance agreement, it became apparent to Plaintiffs that Defendant had no intention of executing a forbearance agreement in the first place.

**C.**     **Defendant Attempts to Rescind the Parties' Agreement, Including Cancellation of Foreclosure Sales.**

17.

In response to Plaintiffs' repeated demands that Defendant honor its commitment to enter into a forbearance agreement, Defendant attempted to rescind the parties' agreement by tendering a return of the Closing Payment.

18.

No ground for rescission exists.  Although counsel for Defendant may have made a mistake by agreeing to forbear and cancelling the foreclosure sales on terms set forth in the parties' correspondence, Defendant is bound by the action of its counsel.

19.

In response to Defendant's tender of the Closing Payment, Plaintiffs proposed mediation, noting that the parties' disagreement was not as to any core terms, but merely drafting issues.  If Defendant likewise shared Plaintiffs' goal of executing the forbearance agreement, the drafting issues were easily surmountable.

20.

When Defendant refused to continue working towards execution of the forbearance agreement, Plaintiffs accepted the return of the Closing Payment with a full reservation of rights to enforce the parties' agreement, including Defendant's agreement to cancel foreclosure sales.

D.     **The Pre-Negotiation Agreement Does Not Preclude An Enforceable Agreement to Forbear and Cancel Foreclosure Sales.**

21.

In continuation of its bad faith tactics, Defendant relied upon the parties' execution of a pre-negotiation agreement in September 2014, *over seven months ago*, as the basis for its refusal to honor its prior agreement to enter into a forbearance agreement and cancel foreclosure sales.

22.

The pre-negotiation agreement relied upon by Defendant does not specify the applicable time period or any end date, and cannot extend indefinitely into the future.

23.

By its express terms, the pre-negotiation agreement terminated upon termination of negotiations by any party:  "Any party to this Agreement may terminate the discussions and negotiations at any time, for any reason, in such party's sole and absolute discretion, with or without prior notice to the other parties."

24.

The parties terminated such negotiations when they reached an impasse in negotiations in December 2014.  The parties did not engage in any further negotiations following that date.

25.

This termination is further evidenced by the fact that, on February 28, 2015, Plaintiffs requested that Defendant confirm in writing the parties' intent to negotiate the terms of a forbearance agreement.  Defendant refused, even though the language proposed by Plaintiffs tracked the pre-negotiation agreement, verbatim.

-13-

26.

Upon termination of negotiations by Defendant, the pre-negotiation agreement likewise expired, unless renewed by the parties.

27.

In the parties' prior course of dealings, Defendant required the execution of a new pre-negotiation agreement upon the re-commencement of negotiations, which Defendant did not do in this instance.

28.

Therefore, at the time the parties entered into the forbearance agreement, the pre-negotiation agreement had been terminated.  Thus, the parties' failure to formally execute a forbearance agreement (which was due to no fault of Plaintiffs) does preclude the existence of an enforceable agreement.

29.

There was no failure of a "meeting of the minds," but rather a refusal by Defendant to enter into a forbearance agreement at all, in breach of the parties' agreement.

**E.**   **Additional Bad Faith Conduct By Defendant.**

30.

During the course of the parties' negotiations, Defendant launched unnecessary and defamatory personal attacks against Plaintiff Mr. Thakkar, namely

in connection with legal proceedings in Florida in which Mr. Thakkar is a judgment debtor.

31.

Although Defendant's interests are directly adverse to Mr. Thakkar's judgment creditors, Defendant appears to have aligned its interests with them. Upon information and belief, Defendant is coordinating its collection efforts against Mr. Thakkar with his judgment creditors, which is improper and a violation of Defendant's duties to Mr. Thakkar and Plaintiffs.

32.

In addition to the Florida judgment creditors, upon information and belief, Defendant has provided financial information of Plaintiffs to third parties who are in litigation with Mr. Thakkar and affiliated entities, in violation of banking and privacy laws.

33.

Plaintiffs also learned that Defendant had paid itself approximately $350,000 in attorneys' fees using Plaintiffs' funds.  When Plaintiffs requested supporting documentation for this amount, Defendant refused, in breach of the terms of the loan documents and the parties' prior agreements.

-15-

34.

In consideration of releases previously executed by Plaintiffs, Defendant

agreed to apply Plaintiffs' funds to the outstanding loan obligations.  Plaintiffs did

not agree to give Defendant a blank check for payment of its legal fees.

35.

In light of Defendant's breach, the releases Defendant previously obtained

from Plaintiffs are null and void.  Plaintiff reserves the right to amend this

Complaint to assert additional claims, including claims related to the improper

termination of swap agreements that caused several millions of dollars in damages

to Plaintiffs.

## COUNT I – DECLARATORY JUDGMENT

36.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set

forth herein.

37.

Plaintiffs and Defendant entered into a binding and enforceable agreement,

notwithstanding Defendant's attempts to renege on the deal.

38.

Defendant, however, has taken the position that the pre-negotiation

agreement precludes enforcement of any deal absent execution by the parties.

39.

There exists an actual, justiciable controversy regarding the enforceability of the agreement between Plaintiffs and Defendant.

40.

Upon information and belief, Defendant intends to foreclose on Plaintiffs' properties notwithstanding its agreement to enter into a forbearance agreement and cancel the foreclosure sales.

41.

The parties are uncertain regarding their future conduct with respect to the status of the loan and properties until the Court declares their respective rights and duties thereto.

42.

WHEREFORE, Plaintiffs pray that the Court declare that the agreement entered into between the parties to forbear and cancel foreclosure sales constitutes a legal, binding, and enforceable agreement.

## COUNT II – BREACH OF CONTRACT

43.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

-17-

44.

Plaintiffs and Defendant entered into a binding and enforceable agreement, upon which all essential terms had been agreed to – namely, an agreement by Defendant to forbear from exercising its remedies based on existing defaults through December 31, 2015, during which period Plaintiffs would agree to meet certain curtailment milestones, in exchange for payment of $650,000 by Plaintiffs.

45.

Pursuant to Defendant's agreement to forbear, Defendant also agreed to cancel the foreclosure sales, which was confirmed in writing by Defendant's counsel.

46.

Contrary to the parties' agreement, Defendant insisted upon execution of a document that provided Plaintiffs no forbearance protection at all and which included terms contrary to the parties' agreement.

47.

Specifically, the document expressly allowed Defendant to exercise its remedies against Plaintiff based on existing defaults (including pursuit of foreclosure sales), reserved Defendant's right to advertise and proceed with foreclosure sales on May 5, 2015 despite the purported agreement to "forbear," and provided Defendant sole and unmitigated discretion to terminate the forbearance

period.  These terms are contrary to the fundamental purpose of any forbearance agreement.

48.

There was no failure of a "meeting of the minds," but rather a refusal by Defendant to enter into any forbearance agreement at all, in breach of the parties' agreement.

49.

As a proximate result of Defendant's breach, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $30 million dollars if Defendant proceeds with the foreclosure sales or pursues other default remedies.

## COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

50.

Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

51.

Every contract includes an implied covenant of good faith and fair dealing.

52.

Defendant breached the covenant of good faith and fair dealing by attempting to renege on the parties' agreement and threatening to proceed with

foreclosure sales on April 7, 2015 immediately upon receipt of $350,000 from Plaintiffs.  Defendant also noticed the properties for foreclosure on May 5, 2015 immediately upon receipt of $150,000 from Plaintiffs the following day.

53.

Although Defendant did not carry out its threat to proceed with the foreclosure sales on April 7, 2015, Defendant continued its bad faith tactics by insisting upon execution of a "forbearance" agreement that Defendant knew Plaintiffs would never accept.

54.

Defendant's bad faith tactics were intended to set Plaintiffs up to "fail" in the execution of a forbearance agreement, so that Defendant could pocket Plaintiffs' funds ($500,000), pay Defendant's legal fees, and proceed with the foreclosure of valuable collateral anyway.

55.

When Plaintiffs challenged Defendant's bad faith, Defendant attempted to rescind the parties' agreement, even though no ground for rescission existed.

56.

In defense of its actions, Defendant relied solely upon the pre-negotiation agreement executed by the parties over seven months ago, as if the pre-negotiation

agreement allowed Defendant to make and break deals with Plaintiffs with impunity.

57.

Furthermore, as set forth above, the pre-negotiation agreement was no longer in effect and did not govern the course of the parties' negotiations.

58.

Defendant further exhibited bad faith by its repeated personal and defamatory attacks against Plaintiff Mr. Thakkar and by working against his interests in other litigation.  Upon information and belief, Defendant provided confidential financial and other information to adverse third parties in an effort to create additional excuses to renege on Defendant's commitment to execute a forbearance agreement with Plaintiffs.

59.

As a proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $30 million if Defendant proceeds with the foreclosure sales or pursues other default remedies.

## COUNT IV – FRAUD

60.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

61.

Defendant represented to Plaintiffs that the parties would enter into a forbearance agreement, and that Defendant would cancel the foreclosure sales.

62.

Defendants' representations to Plaintiffs were false, and Defendant knew the representations were false at the time they were made.

63.

Defendant intended to induce Plaintiffs to reply upon the assurances of a forbearance agreement and cancellation of foreclosure sales, knowing that Plaintiffs would pay a substantial sum as consideration for the agreement.

64.

At the time Defendant accepted Plaintiffs' funds, Defendant had no intent of executing a forbearance agreement with Plaintiffs or cancelling the foreclosure sales.

65.

Almost immediately after receiving the initial wire for $350,000, Defendant demanded that Plaintiff execute a revised term sheet that reserved Defendant's right to proceed with foreclosure sales the following month, on May 5, 2015, which was the exact opposite of the forbearance agreement reached by the parties and for which Plaintiffs agreed to pay $500,000.

66.

Plaintiffs did not agree to pay Defendant $500,000 simply to postpone the foreclosure sales to the following month.

67.

When Plaintiffs balked and demanded that Defendant honor the parties' agreement, Defendant threatened to proceed with foreclosure sales scheduled for the following week, which it previously agreed to cancel.

68.

When Plaintiffs did not give in to Defendant's demands, Defendant found another way to pocket the Closing Payment and proceed with the foreclosure sales anyway.

69.

Under the new plan, Defendant set Plaintiffs up to "fail" in the execution of the forbearance agreement by repeatedly insisting on a document that Defendants knew Plaintiffs would never sign.

70.

When the parties reached an "impasse," which was Defendant's intent all along, Defendant would pocket the Closing Payment and proceed with the foreclosure sales, or extract even more money from Plaintiffs in exchange for another "postponement."

71.

As Defendant continued to insist on execution of a document that provided Plaintiffs with no forbearance protection at all, it became apparent to Plaintiffs that Defendant never intended to honor the parties' agreement.

72.

In response to Plaintiffs' allegations of fraud and bad faith, Defendant cited to the pre-negotiation agreement executed by the parties over seven months ago, as if the document allowed Defendant to make and break deals with impunity. Moreover, this agreement had been previously terminated.

73.

Plaintiffs reasonably relied upon Defendant's assurances of a forbearance agreement and reasonably expected Defendant to honor the terms of the parties' agreement.

74.

As a direct and proximate cause of Defendant's fraud, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $30 million if Defendant proceeds with the foreclosure sales or pursues other default remedies.

## COUNT V – PRELIMINARY INJUNCTION

75.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

76.

Plaintiffs are in the process of developing the properties that Defendant seeks to foreclose on May 5, 2015.

77.

Pursuant to Defendant's representations regarding the forbearance agreement to which the parties had agreed, Plaintiffs made additional investments in these properties.

78.

Plaintiffs will be irreparably harmed unless an injunction is issued which prohibits the foreclosure sales.

79.

Defendant will not be prejudiced by such an injunction.

## COUNT VI - PROMISSORY ESTOPPEL

80.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

81.

Defendant assured and promised Plaintiffs that the parties would enter into a forbearance agreement, and that the foreclosure sales would be cancelled.

82.

Defendant should have reasonably expected Plaintiffs to rely on such assurances and promises.

83.

Plaintiffs relied upon Defendant's assurances and promises to their detriment.

84.

Injustices can be avoided only by the enforcement of the promise, because as a result of the reliance, Plaintiffs changed their position to their detriment by further investing in the properties rather than pursuing alternative and other financing to avoid the foreclosure sales.

## COUNT VII – TO SET ASIDE WRONGFUL FORECLOSURES AND DAMAGES FOR WRONGFUL FORECLOSURES

85.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

86.

Upon information and belief, Defendant intends to foreclose on the properties on May 5, 2015.

87.

The foreclosures, if consummated, would be improper.

88.

As confirmed in writing by Defendant's counsel, in exchange for payment of $500,000 from Plaintiffs, Defendant agreed to cancel the foreclosure sales pending execution of the forbearance agreement and payment of an additional $150,000, which has not occurred due to Defendant's misconduct.

-27-

89.

Plaintiffs stand wiling and ready to perform under the parties' agreement and have tendered the amounts owed pursuant to its terms, but Defendant has refused.

90.

Plaintiffs are entitled to the benefit of their bargain and to have the foreclosure sales set aside and have title to the properties restored to them, in the event Defendant proceeds with the foreclosures sales as scheduled on May 5, 2015.

91.

Furthermore, Plaintiffs are entitled to damages for Defendant's wrongful foreclosure in an amount to be determined at trial, but in no event less than $30 million.

## COUNT VIII – ATTORNEYS' FEES

92.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

93.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense, entitling Plaintiffs to an award of attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 and otherwise under Georgia law.

## COUNT IX – PUNITIVE DAMAGES

94.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein.

95.

By the conduct alleged above, Defendant has acted intentionally, recklessly, maliciously and with intent to deceive and defraud.

96.

As a result of the conduct alleged above, Defendant is therefore liable to Plaintiffs for punitive and exemplary damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for the following relief:

(1)    Plaintiffs be awarded equitable relief and/or compensatory damages on their claims in an amount to be determined at trial, but in no event less than $30 million;

(2)    The Court enter an interlocutory injunction prohibiting Defendant from engaging in the May 5, 2015 foreclosure sale or any other foreclosure sale prior to December 31, 2015;

(3)    Plaintiffs be awarded punitive damages in an amount to be determined at trial;

(4)   Plaintiffs  be awarded their attorneys' fees and costs of litigation; and

(5)   Plaintiffs be awarded such other and further relief as the Court and

jury deem just and proper.

This 1st day of May, 2015.


Richard L. Robbins
Georgia Bar No. 608030
Jeremy U. Littlefield
Georgia Bar No. 141539
ROBBINS ROSS ALLOY BELINFANTE
  LITTLEFIELD LLC
999 Peachtree Street, N.E.
Atlanta, GA  30309-3996
(678) 701-9381 Telephone
(404) 856-3250 Facsimile

*Attorneys for Plaintiffs*

# Exhibit A

## Debbie Butler

| | |
|---|---|
| **From:** | Whitney K. McGuire <WMcGuire@smithhulsey.com> |
| **Sent:** | Thursday, April 02, 2015 9:59 AM |
| **To:** | Jeremy Littlefield |
| **Cc:** | Michael E. Demont; Richard Robbins; JSR@phrd.com; Whitney K. McGuire |
| **Subject:** | RE: Sending: Wells Fargo Bank Trust Account Wiring Instructions (00773136).DOC |

Jeremy,

The foreclosure sales will not be canceled until the second wire of $150,000 is received tomorrow.  The sales can be canceled through 3 p.m. tomorrow.  Once the $150,000 is received tomorrow (before 3 p.m.), they will be canceled.

Thank you.
Whitney

Whitney K. McGuire
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
904-359-7864
904-321-7138 (cell)
904-359-7708 (Fax)
wmcguire@smithhulsey.com

**From:** Jeremy Littlefield [mailto:Jeremy.Littlefield@robbinsfirm.com]
**Sent:** Thursday, April 02, 2015 9:58 AM
**To:** Whitney K. McGuire
**Cc:** Michael E. Demont; Richard Robbins; JSR@phrd.com
**Subject:** RE: Sending: Wells Fargo Bank Trust Account Wiring Instructions (00773136).DOC

Whitney,

Please confirm that when WF receives the funds that the foreclosures scheduled for April 7 are off.  With the agreement to enter into a forbearance agreement by April 8, we assume this is the case but wanted to confirm.  I will send the Federal ID # as soon as I receive it.

**From:** Whitney K. McGuire [mailto:WMcGuire@smithhulsey.com]
**Sent:** Thursday, April 02, 2015 9:55 AM
**To:** Jeremy Littlefield
**Cc:** Michael E. Demont; Richard Robbins; JSR@phrd.com; Whitney K. McGuire
**Subject:** RE: Sending: Wells Fargo Bank Trust Account Wiring Instructions (00773136).DOC

Jeremy,

Please provide the Federal ID # for the $350,000 wire so I can confirm it.

1

Thank you.
Whitney


Whitney K. McGuire
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
904-359-7864
904-321-7138 (cell)
904-359-7708 (Fax)
wmcguire@smithhulsey.com

---

**From:** Jeremy Littlefield [mailto:Jeremy.Littlefield@robbinsfirm.com]
**Sent:** Wednesday, April 01, 2015 3:19 PM
**To:** Whitney K. McGuire
**Cc:** Michael E. Demont; Richard Robbins; JSR@phrd.com
**Subject:** RE: Sending: Wells Fargo Bank Trust Account Wiring Instructions (00773136).DOC

Whitney, given the time of day, the "immediate" wire of $350k will be completed tomorrow, with the balance of $150k by Friday.  Obligors agree that if they fail to satisfy the conditions as set forth below, WF may retain the funds, which will be applied to the Obligations.

---

**From:** Whitney K. McGuire [mailto:WMcGuire@smithhulsey.com]
**Sent:** Wednesday, April 01, 2015 2:48 PM
**To:** Jeremy Littlefield
**Cc:** Michael E. Demont; Richard Robbins; JSR@phrd.com; Whitney K. McGuire
**Subject:** RE: Sending: Wells Fargo Bank Trust Account Wiring Instructions (00773136).DOC

Jeremy,

Wells Fargo is agreeable to an immediate wire of $350,000 and the balance of $150,000 by Friday, 4/3, which will be held in trust pending execution and closing of a forbearance agreement by April 8 at which time an additional $150,000 must be delivered.  If the Obligors do not meet the requirements of executing a forbearance agreement and delivering the additional $150,000 by April 8, Wells Fargo will retain the $500,000.

Whitney

Whitney K. McGuire
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
904-359-7864
904-321-7138 (cell)
904-359-7708 (Fax)
wmcguire@smithhulsey.com

---

**From:** Jeremy Littlefield [mailto:Jeremy.Littlefield@robbinsfirm.com]
**Sent:** Wednesday, April 01, 2015 1:43 PM
**To:** Whitney K. McGuire

**Cc:** Michael E. Demont; Richard Robbins; JSR@phrd.com
**Subject:** RE: Sending: Wells Fargo Bank Trust Account Wiring Instructions (00773136).DOC

Thanks, Whitney. I have forwarded along. Very unlikely that the wire can be completed today on such short notice. We anticipate wiring $350k no later than tomorrow and the balance of $150k no later than Friday. Obligors agree that the funds will be held in trust pending execution of a forbearance agreement and delivery of an additional $150k by April 8. In the event Obligors do not meet these requirements, Obligors agree that WF may retain the funds, which will be applied to the Obligations.

**From:** Whitney K. McGuire [mailto:WMcGuire@smithhulsey.com]
**Sent:** Wednesday, April 01, 2015 1:21 PM
**To:** Jeremy Littlefield
**Cc:** Whitney K. McGuire; Michael E. Demont; Richard Robbins; JSR@phrd.com
**Subject:** Fwd: Sending: Wells Fargo Bank Trust Account Wiring Instructions (00773136).DOC

Jeremy

Attached are the wiring instructions for the Smith Hulsey & Busey Trust Account. Please include a note that the wire is for Niloy/Thakkar Forbearance Fee. Also please send me the federal ID number once the wire is initiated.

To confirm the wire should come from a non judgment debtor.

Whitney

Whitney K. McGuire
Smith Hulsey & Busey